UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEBORAH A. DUDLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 11 C 8180 |
| | ) | |
| BELLWOOD SCHOOL DISTRICT #88, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on the motion of Defendant Bellwood School District 88 ("Bellwood") for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below the motion is granted.

## BACKGROUND[1]

Plaintiff Deborah Dudley ("Dudley"), an African American woman, was hired by Bellwood in 1977 as a kindergarten teacher at Wilson Elementary School in Bellwood, Illinois. In 2005 the Illinois State Board of Education ("ISBE") visited Wilson Elementary School to assess the school's compliance with the Reading First

[1] The following facts are taken from the parties' respective statements and exhibits filed pursuant to Northern District of Illinois Local Rule 56.1. The Court reviews each Local Rule 56.1 statement and disregards any argument, conclusion, or assertion unsupported by the evidence in the record. Bellwood objects to the form of Dudley's statement of facts. Although Dudley does not strictly adhere to the requirements of Local Rule 56.1, the responses do not amount to total non-compliance with Local Rule 56.1, which would be significant enough to warrant ignoring Dudley's statement of facts altogether. Bellwood's objection is overruled.

educational program aimed at ensuring uniform learning curriculums throughout the State of Illinois. The Reading First program instituted several teaching requirements which mandated the allotment of uninterrupted classroom reading time on a daily basis. The failure of a school to meet the Reading First benchmarks would jeopardize the school's receipt of numerous state funded grants.

During the ISBE's 2005 visit to Wilson Elementary School, Dudley's kindergarten class was visited. After the visit the ISBE sent a report of their observations to interim superintendent Willie Mack. The report critically assessed their observations of a kindergarten class; however it did not specify the particular instructor of the class. According to the ISBE report the instructor was absent from the room for long periods of time, called prolonged classroom breaks during the class's uninterrupted reading time and exhibited bizarre behavior. The ISBE report made clear that the kindergarten teacher in question showed a conscious lack of regard for the Reading First guidelines and put the school at risk for the discontinuation of the Reading First funds. The ISBE report recommended that the kindergarten teacher be moved to a school which does not have the Reading First requirements. Dudley was provided with documentation of the observations that ISBE made.

After the ISBE report, Dudley was reassigned to the Roosevelt Junior High School to serve as a sixth grade teacher in May 2006. After serving as a sixth grade

teacher from 2006 to 2008 Dudley was moved back to teach kindergarten from 2008 until 2010 at Wilson Elementary School. Dudley retired on June 3, 2010.

Before Dudley retired she began to plan for her upcoming departure to ensure her benefits would continue after she left. In April 2010, Dudley contacted Bellwood's Human Resource Director Gwen Frasier ("Frazier") to review her personnel file. During the course of reviewing her personnel file Dudley asked for a copy of the 2005 ISBE report in conjunction with any disciplinary actions that Bellwood took in relation to the ISBE report. Frazier allegedly told Dudley that the 2005 ISBE report and disciplinary documents did not exist. Dudley's complaint alleges that at this time she believed Bellwood forged the ISBE report to facilitate her transfer to Roosevelt Junior High School.

Dudley filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 25, 2011, alleging that she was retaliated against. On August 17, 2011, Dudley received a Notice of Right to Sue, from the EEOC. On November 16, 2011 Dudley filed her complaint pro se. Dudley's complaint alleges: (1) racial discrimination in violation of Title VII, 28 U.S.C. § 2000(e) *et seq*. ("Title VII"); (2) retaliation in violation of Title VII; and (3) discrimination in violation of the Age Discrimination and Employment Act of 1967, 29 U.S.C. § 621 *et seq*. ("ADEA"). Dudley has met all procedural prerequisites to bring the present suit.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, discovery, disclosures, and affidavits establish that there is no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (a); *Winsley v. Cook Cnty.*, 563 F.3d 598, 602-03 (7th Cir. 2009). The moving party bears the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the non-moving party to show through specific evidence that a triable issue of fact remains on issues on which the non-movant bears the burden of proof at trial. *Id.* The non-movant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; he must go beyond the pleadings and support his contentions with proper documentary evidence. *Id*. The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## DISCUSSION

Dudley cryptically alleges in her complaint that Bellwood violated Title VII and the ADEA over the course of her tenure as a teacher at Bellwood and continued

after her 2010 retirement. Dudley alleges in Count I that Bellwood violated Title VII when they discriminated against her on the basis of her race and subjected her to a hostile work environment. In Count II Dudley asserts that Bellwood retaliated against her in violation of Title VII. Finally, in Count III Dudley alleges that Bellwood discriminated against her based on her age in violation of the ADEA.

## I. Discrimination on the Basis of Race (Count I)

Dudley alleges that she experienced discrimination on the basis of her race in violation of Title VII. Title VII prohibits employers from "discriminat[ing] against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Dudley argues that she can establish her Title VII race discrimination claim in two ways. First, Dudley contends that she can establish a disparate treatment claim. Second, Dudley alleges that Bellwood subjected her to a hostile work environment while teaching. The Court will examine both methods of establishing a Title VII discrimination claim.

### A. Disparate Treatment Claim

Dudley claims that she was subjected to racial discrimination on numerous occasions during the course of her tenure as an instructor with Bellwood which continued after she retired. Initially, Dudley claims that in 2005 Bellwood forged the negative ISBE Reading First report which impacted her teaching position. Secondly,

Dudley contends that the negative ISBE report was used as the precipitating factor to oust her from her kindergarten teaching position. Before her transfer, while still teaching at Wilson Elementary School, Dudley claims she was also subject to verbal harassment. Finally, Dudley contends that Bellwood discriminated against her by paying her retirement benefits later than other teachers and when payment was made her benefits were reduced. Bellwood asserts that Dudley's claims are time-barred. Further, Bellwood argues that Dudley has failed to establish a prima facie racial discrimination claim.

**1. Performance Evaluation**

Dudley claims that when speaking with Frazier in April 2010[2] she discovered that the ISBE document did not exist, which led Dudley to believe that the document utilized by Bellwood to justify her transfer had been forged. Bellwood argues that Dudley's claims related to her allegedly fraudulent 2005 ISBE report are time-barred. Under Title VII, "a plaintiff must file an EEOC charge within 300 days of the conduct underlying the claim" and any conduct occurring "more than 300 days before the relevant EEOC charge is time-barred." *Moore v. Vital Prods.*, 641 F.3d 253, 256 (7th Cir. 2011).

[2] Dudley references April 2010 as the time when she discussed the ISBE report with Frazier on numerous occasions. However in her complaint Dudley refers to an August 2010 meeting with Frazier where she was told that the ISBE report did not exist thereby causing Dudley to believe the report was fraudulent. For the purposes of resolving Dudley's Title VII claim, the use of either date does not change the resolution of her claim.

Irrespective of the fact that Dudley has failed to provide any evidence substantiating her allegation of the fraudulent ISBE report, her claim is time-barred. Dudley filed her EEOC charge on July 25, 2011. Therefore for the purpose of determining the scope of Dudley's discrimination claim, any discrete acts perpetrated before September 28, 2010 cannot provide a cognizable basis for her discrimination claim. The discrete nature of the discovery of a purported fraudulent report in April 2010, which she argues led to her transfer of positions, would necessitate Dudley to file an EEOC charge. *See Tinner v. United Uns. Co. of Am.,* 308 F.3d 697, 708 (7th Cir. 2002) ("if the employee knew, or with the exercise of reasonable diligence should have known, that each act, once completed, was discriminatory, the employee must sue upon that act within the relevant statutory period."); *see also de la Rama v. Illinois Dep't of Human Servs*., 541 F.3d 681, 686 (7th Cir. 2008) (suggesting that a negative performance evaluation which led to a loss of responsibilities or change in employment is a substantial enough change in the terms and conditions of employment to constitute a discrete act). Dudley's April 2010 suspicions that the 2005 ISBE report was fraudulent was not timely filed and is dismissed as time-barred.

**2. Transfer of Positions and Verbal Harassment**

Dudley argues that the negative ISBE report was the precipitating factor which led to her 2006 transfer from her kindergarten teaching position to the sixth grade assignment. Dudley also asserts that she was subjected to verbal racial harassment

while teaching at Wilson Elementary School prior to her transfer. Dudley supplements her race discrimination claim with the fact that her kindergarten teaching position was filled by a Caucasian female teacher.

Like her previous fraudulent ISBE report claim of discrimination, Dudley failed to timely file her discrimination claim based on her unjustified transfer of teaching assignments and verbal harassment. Dudley asserts that the transfer occurred in May 2006 and the verbal harassment occurred before her transfer. Therefore both incidents are well past the 300 day filing limitation based on Dudley's July 25, 2011 EEOC charge of discrimination. *Davidson v. Indiana-Am. Water Works*, 935 F.2d 1058, 1059 (7th Cir. 1992) (holding that the limitations period begins to run on the date the defendant takes some adverse personnel action against the plaintiff, and not when the full consequences of the actions are felt). Accordingly, Dudley's Title VII claim related to her May 2006 transfer and her claim of verbal harassment were not timely filed and are dismissed as time-barred.

**3. Timely Payment of Retirement Benefits and Reduced Benefits[3]**

Dudley alleges that she suffered racial discrimination when Bellwood did not pay her retirement benefits until October 2010. In her complaint Dudley asserts that

---

[3]Dudley invites the Court to review various collective bargaining agreements which she asserts constitute a breach of contract claim. Dudley did not include a breach of contract claim in her complaint. Dudley's new claims are unrelated to the causes of action pled in her complaint. *Cf. Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) (plaintiff "may not amend h[er] compliant through arguments in h[er] brief in opposition to a motion for summary judgment"). The Court will resolve Dudley's contractual claims only with respect to their relation to her Title VII claims, which were raised in her complaint. The Court declines the invitation to review Dudley's breach of contract claims.

other Bellwood teachers, who retired at the same time as Dudley, received their benefits much earlier. Dudley additionally asserts that when her benefits were paid they were unjustifiably reduced.

Under Title VII a plaintiff may establish a claim by either the direct or indirect method. *Silverman v. Board of Educ. of the City of Chicago*, 637 F.3d 729, 733 (7th Cir. 2011). Dudley does not specify which method for proving discrimination she seeks to utilize to establish her claim. Establishing discrimination through the direct method requires Dudley to provide direct evidence of discriminatory intent. Dudley has not elicited any direct or circumstantial evidence that shows that Bellwood acted with discriminatory intent. In the absence of direct evidence, Dudley is left to prove her claim under the indirect method. To prove discrimination under the indirect method, Dudley must establish that: (1) she is a member of a protected class; (2) her job performance met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) at least one similarly situated employee, not in her protected class, was treated more favorably. *See Naik v. Boehringer Ingelheim Pharm., Inc.*, 627 F.3d 596, 599-00 (7th Cir. 2010) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). If these elements are established, discrimination is inferred and the burden of production shifts to the defendants to raise a legitimate, nondiscriminatory reason for the adverse employment action. *Naik*, 627 F.3d at 600. Once a legitimate reason is offered, the inference of discrimination is rebutted, and

the plaintiff must establish that the offered reason is a pretext for unlawful discrimination. *Id*. The parties contest whether Dudley has provided a similarly situated employee, not in her protected class, who was treated more favorably.

To determine if employees are similarly situated the Court must find that there are "sufficient commonalities on key variables between the plaintiff and the would be-comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination." *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007). Comparators must have "engaged in similar-not identical-conduct to qualify as similarly situated." *Perick v. Indiana Univ.- Purdue Univ. Indianapolis*, 510 F.3d 681, 691 (7th Cir. 2007).

To support her claim that her retirement benefits were paid untimely Dudley provides the name of one teacher, Helen Edmunds Yarborough. Helen Edmunds Yarborough retired in conjunction with Dudley; however, she received her retirement benefits more expediently. Dudley's overarching Title VII racial discrimination claim alleges that other teachers at Bellwood whom were not African American were given preferential treatment. Helen Edmunds Yarborough is African American. Dudley has not provided any similarly situated employees outside of Dudley's protected class who were given more favorable treatment after their retirement from Bellwood.

Dudley asserts that she was paid a lower amount of retirement benefits than other teachers that retired with her. However, the record does not contain any similarly situated employee who received more favorable treatment by being paid more retirement benefits. The evidence reveals that the payment reductions that Dudley experienced are the result of required payroll deductions mandated by the Teacher's Retirement System.

Dudley has not met her burden of showing that other similarly situated individuals received more favorable treatment after their retirement. Because Dudley has not established a prima facie case for discrimination, it is unnecessary for us to reach the issue of pretext. Bellwood's summary judgment motion concerning Dudley's disparate treatment claim is granted.

**B. Hostile Work Environment Resulting in Discrimination**

Dudley contends that she was subjected to a pattern of harassing conduct that constituted a hostile work environment. Dudley claims that she was harassed by various school administrators over a broad span of time which ranged from 1999 to 2007. Title VII prohibits employers from permitting a work environment that is hostile to employees because of their inclusion in a protected class, such as race. *See Cerros v. Steel Tech., Inc.*, 288 F.3d 1040, 1045 (7th Cir. 2002); *Shanoff v. Ill. Dep't of Human Servs.*, 258 F.3d 696, 701 (7th Cir. 2001). A hostile work environment qualifies as an unlawful employment practice and "[a] charge of discrimination based

on a hostile work environment covers all events during that hostile environment, if the charge is filed within 300 days ... of the last act said to constitute the discriminatory working condition." *Bright v. Hill's Pet Nutrition, Inc.,* 510 F.3d 766, 768 (7th Cir. 2007); *see also Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 104-05 (2002). Dudley alleges in her response to Bellwood's motion that the last discriminatory act that she endured, which formed the basis for her hostile work environment claim, was a fight with a student in November 2007. Dudley filed her EEOC charge of discrimination on July 25, 2011 almost four years after the last discriminatory act. Dudley's hostile work environment claim was not timely filed.

Accordingly, Bellwood's motion for summary judgment concerning Dudley's hostile work environment claim is granted.

**II. Retaliation in Violation of Title VII (Count II)**

Dudley claims that she was retaliated against in violation of Title VII after she filed her EEOC charge of discrimination. The anti-retaliation provision of Title VII prohibits an employer from taking an adverse employment action against an employee because she has filed an employment discrimination charge. *See* 42 U.S.C. § 2000e-3(a).

To establish a retaliation claim under Title VII, a plaintiff must prove her claims under the direct or indirect method of proof. *See Weber v. Univs. Research Ass'n, Inc.,* 621 F.3d 589, 592 (7th Cir. 2010). Under the direct method of proof,

Dudley must show: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two. *Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 673 (7th Cir. 2011). Alternatively, under the indirect method of proof, Dudley must show: (1) she engaged in a statutorily protected activity; (2) she met the employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Tomanovich v. City of Indianapolis,* 457 F.3d 656, 663 (7th Cir. 2006).

To sustain a Title VII retaliation claim under either the direct or indirect methods, Dudley must have engaged in some protected activity prior to the employer's adverse actions taken in retaliation for exercising her right to engage in a protected activity. *See Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1122 (7th Cir. 2009) (the employer must have actual knowledge of the protected activity in order for its decisions to be retaliatory).

Dudley filed her EEOC charge of discrimination on July 25, 2011 and does not allege that Bellwood engaged in any wrongful activity after the filing of her EEOC charge. Dudley does not allege that she suffered any adverse employment actions after she filed her EEOC charge of discrimination. Accordingly, Dudley's retaliation claim under Title VII is dismissed.

**III. ADEA Discrimination Claim (Count III)**

Dudley claims that she was transferred in 2006 from Wilson Elementary School and replaced by a younger female in violation of the ADEA. Bellwood contends that Dudley failed to timely file her charge of discrimination with the EEOC which warrants the dismissal of her ADEA claim. An employee may sue under the ADEA only if she initially files a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice. *Flannery v. Recording Industry Assoc. of America*, 354 F.3d 632, 637 (7th Cir. 2004).

Because Dudley did not file her EEOC charge until July 25, 2011, any conduct that occurred before September 28, 2010 is timed-barred. Dudley only identifies one adverse employment action to serve as the basis for her ADEA claim. Dudley alleges that she was transferred in May 2006 because of her age. Dudley did not file her charge of discrimination with the EEOC within 300 days of her May 2006 transfer. Therefore Dudley's ADEA claim is untimely.

**CONCLUSION**

For the aforementioned reasons, Bellwood's motion for summary judgment is granted.

Charles P. Kocoras
United States District Judge

Dated: May 3, 2013